IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

COALITION OF ARIZONA/NEW
MEXICO COUNTIES FOR STABLE
ECONOMIC GROWTH, et al.,

    Plaintiffs,

v.    Case No.  07-CV-00876 JEC /WPL

KENNETH SALAZAR, in his official capacity as
Secretary of the Interior; ROWAN GOULD, in his
official capacity as Acting Director of the Fish and
Wildlife Service; UNITED STATES DEPARTMENT
OF THE INTERIOR; UNITED STATES FISH AND
WILDLIFE SERVICE,

    Defendants.

CENTER FOR BIOLOGICAL DIVERSITY,

    Defendant-Intervenor.

**MEMORANDUM OPINION AND ORDER ON
FEDERAL DEFENDANTS' MOTION FOR VOLUNTARY REMAND**

THIS MATTER comes before the Court on the Motion for Voluntary Remand (Doc. 46) filed on February 2, 2009 by Defendants Kenneth Salazar, in his official capacity as Secretary of the Interior, Rowan Gould, in his official capacity as Acting Director of the Fish and Wildlife Service, the United States Department of the Interior, and the United States Fish and Wildlife Service (collectively, "the Federal Defendants").

In their Motion, the Federal Defendants request that the Court remand the final rule entitled "Endangered and Threatened Wildlife and Plants; Designation of Critical Habitat for the Spikedace (Meda fulgida) and the Loach Minnow (Tiaroga cobitis)," 72 Fed. Reg. 13356 (Mar.

21, 2007) ("Final Rule") for reconsideration in light of the Department of the Interior Inspector General's recent report, "The Endangered Species Act and the Conflict between Science and Policy" ("Report").  Specifically, the Federal Defendants wish to reconsider the Final Rule's determinations regarding critical habitat for the Spikedace and Loach Minnow.

Neither Plaintiffs nor Intervenor Center for Biological Diversity ("CBD") oppose remand.  Both the Federal Defendants and CBD support continuation of the Final Rule in force while the Federal Defendants reconsider the habitat designation, but Plaintiffs request that the Final Rule be vacated, at least in part, during the period of reconsideration.

I.  **BACKGROUND**

Once abundant in Arizona and New Mexico streams, the spikedace and loach minnow now occupy only 10-15 percent of their historic ranges due to habitat destruction and competition/predation by non-native species.  72 Fed.Reg. 13356-57 (March 21, 2007).  These fish were originally listed as threatened species in 1986, and they have been the subject of litigation virtually ever since.  The Federal Defendants designated critical habitat for the spikedace and loach minnow for the first time in 1994.  In 1996, the Tenth Circuit invalidated the critical habitat designation ("CHD") because the Forest Service had not performed an analysis pursuant to the National Environmental Policy Act.  *Catron County v. United States Fish and Wildlife Service*, 75 F.3d 1429 (10th Cir. 1996).  In 1998, CBD obtained an order requiring the Forest Service to issue a new CHD by February 17, 2000.  *Southwest Center for Biological Diversity v. Clark*, 90 F.Supp.2d 1300 (D.N.M. 1999).  In 2002, Plaintiff New Mexico Cattle Growers' Association brought suit to challenge the second designation of habitat on the grounds that the Forest Service had applied invalid methodology.  *New Mexico Cattle Growers*

*Ass'n v. U.S. Fish and Wildlife Service*, No. CIV 02-0199 (D.N.M. August 18, 2004).

The present case concerns the Federal Defendants' third effort to designate critical habitat for the spikedace and loach minnow. Whereas the previous habitat designation declared approximately 807 miles of streams as critical habitat for the spikedace and 898 miles of streams as critical habitat for the loach minnow, 65 Fed.Reg. 24328, the Final Rule reduces those figures to 259.9 and 426.7 river miles, respectively, 72 Fed.Reg. 13356.

It is Intervenor CBD's position that the Federal Defendants "failed to issue a legally sufficient critical habitat designation for the spikedace and loach minnow" in violation of the Endangered Species Act ("ESA"). *CBD Complt.* at ¶ 51. Specifically, CBD claims the Federal Defendants violated the ESA in the following ways: (1) failing to use the best available scientific data in designating critical habitat; (2) incorrectly defining habitat "essential to the conservation" of the species; (3) reducing the critical habitat from the 2000 Final Rule; (4) failing to articulate rationale for the reduction in habitat previously considered "essential to the conservation" of the species; (5) using the wrong criteria for determining occupied versus unoccupied habitat; (6) failing to adequately account for the benefits of habitat designation in the course of determining that areas of critical habitat should be excluded; and (7) excluding portions of critical habitat based upon invalid and nebulous concept of promoting conservation partnerships on non-federal lands. *Id.* at 13-14. For these reasons, Intervenor CBD claims the Final Rule is arbitrary and capricious in violation of the Administrative Procedures Act ("APA"). *Id.* at ¶ 52.

Where Intervenor CBD argues the critical habitat designation ("CHD") is not broad enough, Plaintiffs contend the Final Rule's CHD is overly broad. Plaintiffs also say the CHD violates the ESA and the APA. *Pls.' Complt.* at ¶ 8. They have identified five ways in which

they contend the CHD violates the EPA: (1) failure to identify exact locations where the essential physical or biological features of the spikedace and loach minnow habitat can be found; (2) use of an invalid standard in that the Federal Defendants allegedly designated as critical habitat areas where only one of the species' essential physical or biological features exists; (3) failure to consider best scientific and commercial data in designating critical habitat; (4) improper use of the "sighting-within-the-last-decade" standard for occupancy of critical habitat; and (5) assessment of the critical habitat designation alone and not in combination with existing land-use controls and related regulations. *Id.* at 11-14. As a result of the Federal Defendants' alleged failure to comply with the ESA, the Coalition and the Association claims that the habitat designation is arbitrary and capricious under the APA. *Id.* at 14-15.

Plaintiffs contend they will be irreparably harmed if the Defendants' critical habitat designation continues in place during the period of the remand. *Id.* at ¶ 30. They argue they would be required to undertake expensive and burdensome analyses of their grazing and other activities on federal land that may adversely affect the spikedace and loach minnow. *Id.* at ¶ 30. They also complain that the Defendants' designation of critical habitat effectively prevents them from routine maintenance and repair of riverbanks, which is necessary to prevent flooding. *Id.* at ¶ 31. The designation may also require diversion of waterflow away from Plaintiffs' properties and "impede land use development within the affected counties." *Id.*

## II.   LEGAL STANDARD

The Tenth Circuit has long recognized that "[a]dministrative agencies have an inherent authority to reconsider their own decisions, since the power to decide in the first instance carries with it the power to reconsider." *Trujillo v. Gen. Elec. Co.*, 621 F.2d 1084, 1086 (10th Cir.

1980). Indeed, federal courts "commonly" grant agency motions for voluntary remand, "preferring to allow agencies to cure their own mistakes rather than wasting the courts' and the parties' resources reviewing a record that both sides acknowledge to be incorrect or incomplete." *Ethyl Corp. v. Browner*, 989 F.2d 522, 524 (D.C.Cir. 1993).

"Ordinarily, when a regulation is not promulgated in compliance with the APA, the regulation is invalid. However, when equity demands, the regulation can be left in place while the agency follows the necessary procedures." *Idaho Farm Bureau Federation v. Babbitt*, 58 F.3d 1392, 1405 (9th Cir. 1995) (internal citations omitted). In the present case, the Court will not actually rule on the merits of the Plaintiffs' allegations of defects in Defendants' designation of critical habitat. *Natural Resources Defense Council v. Dep't of Interior*, 275 F.Supp.2d 1136, 1143 (C.D.Cal. 2002). But the equitable analysis that applies to determine vacatur is the same whether or not the Court reaches the merits of the underlying rule prior to remand. *Id.*

When deciding whether to vacate the habitat designation in this case, the Court should consider the seriousness of the alleged deficiencies in the designation, or "the extent of doubt whether the agency chose correctly," as well as "the disruptive consequences of an interim change that may itself be changed." *Id.* (quoting *Int'l Union, United Mine Workers v. Federal Mine Safety & Health Admin.*, 920 F.2d 960, 967 (D.C.Cir. 1990). Specific factors suggested by the District of Columbia Circuit for the analysis whether to retain or vacate a rule such as the habitat designation at issue in this case are:

> (1) the purpose of the substantive statute under which the agency was acting; (2) the consequences of invalidating or enjoining the agency action; (3) potential prejudice to those who will be affected by maintaining the status quo; and (4) the magnitude of the [alleged] administrative error and how extensive and substantive it was.

*Id.* at 1144 (citing *Endangered Species Committee of the Building Indus. Assoc. v. Babbitt*, 852 F.Supp. 32, 41 (D.D.C. 1994)).

### III.  DISCUSSION

Based on the evidence and arguments presented in this matter, the Court concludes that the balance of equities favors retaining the Final Rule in effect during the period of remand. While it appears from the Interior Inspector General's Report that there is significant doubt as to whether the Federal Defendants chose correctly in designating critical habitat for the spikedace and loach minnow, the doubt is not as to whether the present CHD is overly broad, as argued by Plaintiffs.  The doubt in this case is as to whether the present CHD is overly restrictive and whether it should be broadened.  Moreover, anticipating that the new CHD will be broader than the existing CHD, the Court finds it is the least disruptive to allow the existing CHD to remain in effect pending revision of the Final Rule after remand.  In view of the purpose of the Endangered Species Act and the remaining factors recommended for the Court's consideration by the D.C. Circuit, as set forth more fully herein, the Court will grant the Federal Defendants' Motion for Voluntary Remand, including its request that the existing CHD remain in effect during the pendency of the remand.

#### A.  Purpose of the ESA

Congress' purpose in promulgating the ESA was "to provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved [and] to provide a program for the conservation of such endangered species and threatened species." 15 U.S.C. § 1531(b).  Because these purposes will not be served if the Final Rule's

CHD is vacated during the pendency of the remand, the Court finds this factor counsels against vacatur.

### B.     Consequences of Invalidating or Enjoining the Existing Final Rule

"It is the considered opinion of [the Fish and Wildlife Service] that a vacatur of the Final Rule will result in harm to the species." *Motion* at 8. Regional Director of the Southwest Region of the Fish and Wildlife Service Benjamin N. Tuggle has testified that vacatur in this case "may eliminate the ability of the Service to protect the spikedace and loach minnow in several areas designated as critical habitat in the Final Rule. Retention of the Final Rule would avoid this issue." *Id.* at Ex. B, p. 3. Tuggle notes that the Verde Complex is of critical importance to the recovery of the spikedace. *Id.* He notes that the only other areas where stable spikedace populations occur "are threatened by lead contamination from mining operations, significant dewatering under the Gila River water rights adjudication process, and the continued spread of non-native species." *Id.*

The Coalition Plaintiffs argue that FWS can point "only to the Verde River Complex as an area requiring continuing habitat protections during remand." *Coalition Resp.* at 2. As a result, the Coalition Plaintiffs advocate for only partial vacatur, removing the CHD in all areas other than the Verde River Complex. *Id.* They argue that Defendants have "not established that partial vacatur (leaving the Verde River Complex in place) would lead to any long-term or irreversible harm to the species." *Id.* at 3.

In reply, Defendants argue that Tuggle's discussion of the Verde River Complex was merely an example of how vacatur could harm the spikedace and loach minnow. *Defs.' Reply* at 3. They note Tuggle's further statement that vacatur may render the Service unable to "protect

the spikedace and the loach minnow *in several areas* designated as critical habitat in the Final Rule." *Id.* (emphasis added).

Given the lack of any scientific opinion contrary to Dr. Tuggle's, the Court cannot find the spikedace and loach minnow will be free from harm during the period of remand in the event the Final Rule is vacated—even if the Final Rule is vacated only in part. Given the risk of harm to the threatened species, the Court finds this factor counsels in favor of retaining the Final Rule during the period of remand.

### C. Potential Prejudice to the Coalition Defendants in the Event the Final Rule is Not Vacated on Remand

The Coalition Plaintiffs contend that "[t]he costs of leaving the designation in place [in areas other than the Verde River Complex] are significant." *Coalition Resp.* at 3. During the period of the requested remand, the Coalition Plaintiffs say they face risks of flooding, loss of watering areas for cattle, reduction of access to recreational areas, and restrictions on camping. *Id.* In the Court's view, and based on the scientific opinion of Dr. Tuggle, these considerations pale in comparison to the risk of harm to the spikedace and loach minnow if it is left without CHD during the period of remand.

### D. Magnitude of the Alleged Error in the Final Rule.

The Federal Defendants request a voluntary remand "in order to reconsider the Final Rule in light of the findings in the IG Report." *Motion* at 5. There is no indication in the Motion as to whether the Federal Defendants believe the Final Rule's designation of critical habitat is presently too expansive, as argued by Plaintiffs, or not expansive enough, as argued by CBD. Nor do the Federal Defendants give any indication in their briefing as to what portions of the ESA may have been violated by the Final Rule as it is presently drafted. It is clear, however,

that the Federal Defendants oppose vacatur of the Final Rule.  *Motion* at 7.  Defendants assert it is their "considered opinion" that "a vacatur of the Final Rule will result in harm to the species."  *Id.* at 8.

Upon examination of the portion of the IG Report relevant to this case, it appears that the problem with the existing Final Rule is more likely that its designation of critical habitat was not expansive enough.  The IG Report notes that "MacDonald selected one of several potential CHDs for the spikedace and loach minnow" and that this option "limited the amount of critical habitat that would be designated."  *Motion* at Ex. A, p. 55-56.  Reportedly, MacDonald "desired to make the CHD as small as possible through the use of exclusions" and "was hostile to the idea of including any unoccupied habitat."  *Id.*  One Fish and Wildlife Official in New Mexico indicated that "MacDonald would not even accept a proposal that *currently occupied* areas be included as critical habitat if there was no documentation or proof that the area was occupied at the time the species was listed under the ESA."  *Id.* at 56 (emphasis in original).

Whereas the Federal Defendants appear to have requested remand in order to remedy errors resulting in an unduly restrictive CHD, Plaintiffs argue there are additional errors that have resulted in an unduly expansive CHD.  Given the overall goal of effectuating the purposes of the ESA, the Court finds the magnitude of the errors asserted by the Federal Defendants and the CBD outweighs the magnitude of errors asserted by the Plaintiffs.  "The strong public policy in favor of environmental protection indicates that the Court should resolve uncertainties in estimating the risk of harm from habitat conversion during remand, in the absence of viable critical habitat designations, in favor of retaining the disputed rules."  *NRDC*, 275 F.Supp.2d at 1146.

## IV. CONCLUSION

In view of the analysis set forth herein, the Court finds that the Federal Defendants' Motion for Voluntary Remand is well-taken and should be granted. The Court further finds that the balance of equities in this case favors retaining the Final Rule, in particular its designation of critical habitat for the spikedace and loach minnow, in effect during the period of remand.

IT IS ORDERED that the *Federal Defendants' Motion for Voluntary Remand* (Doc. 46), filed February 2, 2009, is GRANTED, and the Final Rule remanded to the United States Department of the Interior, Fish and Wildlife Service. There being no further business before the Court in this matter at this time, the case will be dismissed.

DATED May 4, 2009.

s/John Edwards Conway

_____
SENIOR UNITED STATES DISTRICT JUDGE

Counsel for Plaintiffs:

Damien Schiff, Esq.
James Sherman Burling, Esq.
Ralph W. Kasarda, Esq.
Sacramento, CA

Lee E. Peters, Esq.
Las Cruces, NM

Counsel for Defendants:

Erik E. Petersen, Esq.
Joseph H. Kim, Esq.
Washington, D.C.

Jan Elizabeth Mitchell, Esq.
Albuquerque, NM

Counsel for Intervenor:

John Buse, Esq.
Chicago, IL

Michael Senatore, Esq.
Washington, D.C.

Susan Marie George, Esq.
Albuquerque, NM